This is a bill brought by the appellant, praying that the trustee in certain deeds of trust constituted may be stayed from selling the property therein conveyed ; and that (on the ground of usury) the said deeds may be decreed to be cancelled j and for general relief.
Although that bill, after setting out the particulars of the usurious contract, calls upon the defendant to answer the same, in the usual way, we, nevertheless, infer, that it is. not such a bill for discovery and relief, as is contemplated in the third section of the act of usury. We infer this, not only because it omits to proffer to pay the principal money loaned by the appellee to the appellant, and to pray that the notes, given for the usurious consideration, may also be decreed to be given up and cancel-led ; but also, because the appellant (so far from averring therein that he stood in need of a discovery of the usury from the appellee) avers, on the contrary, that he could prove the same by a particular witness whom he names.
*409 ‘The particular mischief intended to be remedied by Shat section of the aGt was that, as usurious contracts were frequently made in secret, there might often be a defect of evidence to detect them-, in the ordinary course;. it therefore authorizes a discovery in such case, from the conscience of the defendant, on the conditions prescribed by the act. This construction, which plainly results from the section itself now in question, is made more clear, by referring to its prototype, the fifth section of the act of 1748, upon the same subject; in the preamble to which the foregoing is expressly stated to be the mischief intended to be remedied. But this section, being adapted to a limited and specified case, does not interfere with, nor affect the general and ulterior jurisdiction of, the courts of equity, antecedently existing on the subject.
For example, it does not extend to, nor impose any conditions on, a party applying to a court of equity to perpetuate his testimony, touching a question of usury ; (as is seen in the case of The Earl of Suffolk v. Green, 1 Atk. 450.) nor to the case of an application to a court of equity to relieve against a judgment at law, obtained by surprise, or accident, in a case of usury. In such case, the mode of relief would be by granting a new trial, in which the whole contract might be vacated; and not, by subjecting the plaintiff to pay the principal sum, repeal the statute of usury, pro tanto, merely because he found it necessary to come into a court of equity, to be relieved against the accident- So, in the case before us, of this new species of judgment bonds, (if we may use the expression,) of these modern shifts and contrivances to evade, not only the statute of usury, but also the jurisdiction, at least, of the courts of law, and which, therefore, render the interposition of the courts of equity peculiarly necessary; in this case of an application, to a court of equity, to stay the hand of the trustee, until the validity of the contract can be inquired into in a court of law, by a plaintiff who wants no favour, or discovery from *410 the defendant, but is even full-handed as to evidence to prove the usury in a court of law; neither the spirit or meaning of the act extends to impose on the plaintiff the loss of his principal sum due under the usurious contract. While such a construction would, as to that extent, operate a repeal of the statute of usury, in all cases whatsoever, secured by deeds of trust, as now practised •upon and understood; the construction under which we now act does not go one jot further than the case last put, of relieving against a judgment obtained by surprise in a case of usury. In both cases, the aid of a court of equity is afforded, to enable the court of law to annul the usurious contract altogether; with this strong feature in favour of the case now before us, that the plaintiff has never before had an opportunity to do it.
The interference of a court of equity, in such case, so far as to permit an inquiry, by a court of law, into the Validity of the contract, is not such a mighty boon as ought to subject the plaintiff to the loss of his principal sum. It is a power which is even exercised by the courts of law} as is seen in the case of Cooke v. Jones, Cowp. 727. In that case, a judgment had been entered up upon a warrant of attorney, and a scire facias was depending to revive and enforce the same. On a sugjgestion, that the consideration of the judgment was usurious, the court of king’s bench stayed the proceedings upon the scire facias, and directed an issue to try the validity of the contract on which the judgment was founded, on the ground (which most emphatically applies to the case before usj that the defendant “ had had no opportunity to plead the statute of usury, and was, therefore, without relief, but by the interposition of the court.”
If this power was rightfully exercised, without condition, by a court of law, in relation to a judgment passing at its own bar, and in some sense receiving the sanction and ratification of the court, it ought, á fortiori, to he *411 exercised in like manner by a court of equity, in relation to a transaction, passing, in pais, suggested to be tainted with usury, and presented in a form calculated to elude every other jurisdiction, save the usual and salutary jurisdiction of such court. When an usurious contract is to be enforced by a mode defying the power of the other tribunals of justice, a court of equity will be neither tardy, nor rigorous, in extending its aid to prevent it.
The result of the foregoing observations, as applied to the case before us, is that, as the case made by the bill is not that embraced by the third section of the act for suppression of usury; as the appellant wanted no discovery from the appellee, but only found it necessary to apply to the court of equity to stay the trustee from selling, until the question of usury should be inquired into, before some competent tribunal; the chancellor ought not to have imposed on him the loss of the principal sum, but he should have enjoined the trustee from selling, until, by some proper proceeding, to be instituted by the appellee, he should establish the validity of his contract j in which case the injunction should be dissolved ; and in the contrary event, perpetuated: in the former case, also, the deeds (being then cleansed of their usurious taint by the judgment of a competent tribunal) should undoubtedly be held as a security to insure the payment of the money.
On these grounds, we are unanimously of opinion that the decree should be reversed, with costs, and the cause remanded to the court of chancery for the Richmond, district to be finally proceeded in, pursuant to the principles now declared.